UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HERMA ROBINSON,                                         :
                                                        :     No. 10-CIV-3926 (JFB) (AKT)
                 Plaintiff,                             :
                                                        :
                                                        :
          v.                                            :
                                                        :
ZURICH AMERICAN INSURANCE COMPANY, and                  :
JENNIFER ROBBIE aider and abettor,                      :
                                                        :
                 Defendants.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the

Southern and Eastern Districts of New York, Defendants Zurich American Insurance Company

("Zurich") and Jennifer Robbie ("Robbie") (collectively, "Defendants"), respectfully submit the

following response to Plaintiff's Rule 56.1 Counter-Statement of Material Facts.  By providing

these responses, Defendants do not concede the materiality of any of the facts asserted in

Plaintiff's statement.[1]

Plaintiff's Employment Under Kostkowski

1.    Defendants are unable to respond to Plaintiff's own characterization of her

"industry experience," and lack knowledge or information sufficient to form a belief as to the

remainder of Paragraph 1.

---

[1]      All pleadings, deposition testimony, deposition exhibits, and other documents cited herein are annexed to
the Declaration of Peter A. Walker, Esq., dated October 7, 2011, and the Declaration of Jennifer Robbie, dated
October 7, 2011, submitted with Defendants' opening papers, or are attached to the Supplemental Declaration of
Peter A. Walker ("Walker Suppl. Decl."), dated December 9, 2011, the supplemental Declaration of Jennifer
Robbie ("Robbie Suppl. Decl."), the Declaration of Joseph Kostkowski, dated December 8, 2011, and the
Declaration of Catherine Spera, dated December 9, 2011, submitted herewith.

2.      Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's reasons for submitting an application to Zurich, and contend that this fact is neither material nor relevant.

3.      Admit that Plaintiff interviewed with Deborah Cope and Joseph Kostkowski, the latter of whom interviewed Plaintiff via telephone and in-person, and contend that this fact is neither material nor relevant.

4.      Admit that Kostkowski provided Plaintiff with a couple of files to audit.  As the cited deposition testimony establishes, Kostkowski viewed this as a "little technical" test.

5.      Admit that Plaintiff also met with Thomas Lysaught.  Defendants lack knowledge or information sufficient to form a belief as to the statements made to Plaintiff during this interview, and contend that this fact is neither material nor relevant.

6.      Defendants deny knowledge or information sufficient to form a belief as to whether Plaintiff received a call from Deborah Cope while she was out of the country, and contend that this fact is neither material nor relevant.

7.      Admit.

8.      Defendants are unable to respond to Plaintiff's own characterization of her "industry experience," and deny knowledge or information sufficient to form a belief as to the remainder of the statements in Paragraph 8.

9.      Defendants refer the Court to the referenced document for its content and meaning.

10.     Admit that Plaintiff's job duties included the statements in Paragraph 10, among other requirements.  (*See* Defendants Rules 56.1 Statement of Material Facts ("Defs.' 56.1 Stmt")  at  ¶¶ 8, 16, 60, Walker Decl. Ex. I.)

11.   Admit that Plaintiff reported to Kostkowski through July of 2007.  (*See* Defs.'
56.1 Stmt at ¶¶ 3, 7.)

12.   Admit the first two sentences but deny the third and fourth sentence of Paragraph
12.  Plaintiff did not "satisfactorily complete[] these audits with no discipline or negative
performance appraisal."  (*See* Defs.' 56.1 Stmt at ¶¶ 13, 24, 26, 32, 33, 35, 48, 50; the
Declaration of Joseph Kostkowski ("Kostkowski Decl."), dated December 8, 2011, at ¶¶ 4-6.)
While performing closed file audits under Kostkowski, Plaintiff's audits were often inaccurate
and inconsistent, her communication skills were poor, and she sometimes failed to grasp the
skills and concepts required for her position.  (*See id.*; Deposition of Joseph Kostkowski,
attached as Exhibit E to the Walker Decl., at 51:18-52:04; 58:20-59:03; 60:10-16; 99:17-
100:12; 120:17-121:03; Transcript of the Deposition of Jennifer Robbie, attached as Exhibit D
to the Walker Decl., at 79:19-80:16; 82:07-83:02; 90:17-25.)  Defendants admit that prior to
2007, the closed files were audited, in part, to measure the claim handlers' compliance with
Zurich's Best Practices.

13.   Defendants refer the Court to the referenced document for its content and
meaning.

14.   Defendants refer the Court to the referenced document for its content and
meaning.

15.   Admit.

16.   Deny.  Kostkowski had several informal discussions with Plaintiff to improve her
performance and agreed that Plaintiff should receive a verbal warning in 2007 because the
informal discussions did not result in Plaintiff improving her performance.  (Defs.' 56.1 Stmt at
¶¶ 24, 25 29, 50; Walker Decl., Ex. E at 51:18-52:04; 60:10-16; 140:14-21; Walker Decl., Ex.

3

D at 79:19-80:16; 90:17-25; Kostkowski Decl., ¶ 6.)  Kostkowski and Robbie jointly agreed that Plaintiff would benefit from a communications course.  (Defs.' 56.1 Stmt at ¶ 29.)

17.    Admit that Plaintiff was sent to Atlanta at some point in 2006 but deny knowledge or information sufficient to form a belief as to whether this was the first time that Plaintiff met Magid.

Plaintiff is Assigned Transactional Audits

18.    Admit.

19.    Admit.  Kostkowski believed that the transactional audits were a "good fit for [Plaintiff] based on her skills and competencies" because Kostkowski realized that Plaintiff's communications skills were lacking and, at the time, Kostkowski erroneously believed that the transactional audits involved less communications with the field professionals than did the closed file audits.  (Defs.' 56.1 Stmt at ¶ 13; Walker Decl., Ex. E at 64:02-65:11, 102:01-08; Kostkowski Decl., ¶ 7.)

20.    Admit that Plaintiff had not worked on the transactional audits prior to this.  Deny that Plaintiff required training.  Plaintiff had years of experience auditing entire closed files, as she claims in Paragraph 1 of her Counter-Statement of Material Facts, and therefore should have been able to transition quickly into the transactional auditor role.  (Defs.' 56.1 Stmt., ¶ 14; Walker Decl., Ex. E at 119:10-20; Transcript of the Deposition of Patricia Magid, attached as Exhibit G to the Walker Decl., at 65:14-24.)

21.    Admit that Plaintiff, along with all of the other auditors, had to adjust to a minor administrative learning curve, but deny that the learning curve was significant or that Plaintiff required training.  Kostkowski testified that the transactional audits "did not take or should not have taken any additional technical knowledge because you're looking at the same thing that

you would have been looking at from a technical standpoint in a closed file review." (Walker Decl., Ex. E at 119:07-16.) The "learning curve" existed only insofar as the transactional auditor had to learn certain "administrative" matters and the Best Practices utilized for transactional audits. (Defs.' 56.1 Stmt., ¶ 14; Walker Decl., Ex. E at 119:16-20.)

22. Admit.

23. Deny. Kostkowski testified that Plaintiff met with Magid to "go over []
expectations and the audits." (Walker Suppl. Decl., Ex. D at 115:11-12.) Magid testified that she did, in fact, "show" Plaintiff the audits and give Plaintiff "what [Magid] had in terms of spreadsheets and guidelines." (Walker Suppl. Decl., Ex. C at 64:19-65-4.)

24. Admit in part and deny in part. Magid provided Plaintiff with the guidelines she had regarding the transactional audits. (Walker Suppl. Decl., Ex. C at 64:19-65-4.) Robbie did not provide Plaintiff with training material "on the day [Plaintiff] started with this new team," since Plaintiff was assigned to transactional audits in or around April 2007 by Kostkowski; at that time, Robbie was not Plaintiff's supervisor and in fact, was not even on the transactional audits team yet, and therefore would not have known whether Plaintiff required any guidelines. (*See* ¶ 11, *supra*; Defs.' 56.1 Stmt, ¶ 11.)

25. Deny. Magid did not throw "documents" at Plaintiff and, in fact, did not have any documents in her office because all of the files for the transactional audit were maintained online. (*See* Defs.' 56.1 Stmt, ¶ 104; Walker Decl., Ex. G at 43:10-20; 44:8-13.)

26. Deny that Magid did not train Plaintiff. Magid met with Plaintiff and discussed the transactional audit procedure. (*See* ¶ 23, *supra*.) Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff had the current version of the Best Practices or a version that had not yet been implemented, but state that Plaintiff's

confusion over the current Best Practices in 2007 was not the catalyst for her termination in 2009.  The remainder of Paragraph 26 sets forth an opinion and/or conclusion rather than a statement of fact.

27.    Deny the first two sentences, which set forth opinions and/or conclusions rather than statements of fact and fail to identify any sources.  Admit the third sentence only insofar as Plaintiff correctly states that her 2007 performance review reflects that she tried to apply Best Practices that were not yet in place; however, the performance review also states that Plaintiff received "[a]dditional training with another auditor to clarify how to audit these issues."  (Walker Decl., Ex. J., at Zurich 000002.)  Plaintiff was not terminated in 2009 because of her confusion in mid-2007 regarding the current version of Zurich's Best Practices; the termination stemmed from Plaintiff's poor auditing skills, her failure to understand the basic concepts of her position, and the complaints made by the field claims employees regarding her blunt communications, all of which began well before 2007 and continued until Plaintiff's termination in 2009.  (*See* Defs.' 56.1 Stmt., ¶¶ 20-36, 43-51, 64-68, 70-71, 80-85, 91-92, and accompanying exhibits.)

28.    Defendants admit the first sentence in Paragraph 28, but deny the remainder of the Paragraph, which sets forth opinions and/or legal conclusions rather than statements of fact.

Best Practices and Subjectivity

29.    Deny.  Plaintiff was not required to "use the 'best practices' to audit files."  As an auditor, Plaintiff reviewed files to ensure compliance with Zurich's Best Practices; however, the Best Practices were guidelines, and not a mandate, and auditors had discretion to determine whether the Best Practices were too stringent in any given situation.  (Kostkowski Decl., ¶ 4.)

As such, the Best Practices specifically provide that "deviations" are "always permitted given the particular circumstances of a claim."  (Walker Suppl. Decl., Ex. F.)

30.    Admit in part and deny in part.  The Best Practices are guidelines on how the files should be handled if the circumstances warrant that the file be handled in that particular manner.  The Best Practices were not stringent and the specific circumstances of each file may have required a variation from the Best Practices.  (*See* ¶ 29, *supra*.)

31.    Admit.

32.    Admit, and contend that this fact is neither material nor relevant.

33.    Admit.  Because the Best Practices are "not concrete," as admitted, Plaintiff was not required to apply the Best Practices stringently to every file.  (*See* ¶¶ 29, 30, *supra.*)

34.    Deny.  There were always subjective and objective components to the audits; however, prior to 2007, Zurich placed an emphasis on the objective criteria, whereas in 2007, the Company moved toward emphasizing the quality of the files, which required more of a subjective analysis.  (*See* Defs.' 56.1 Stmt., ¶¶ 20, 21; Walker Decl., Ex. D at 30:07-17; 33:12-18; Ex. G at 33:21-24.)

35.    Admit in part and deny in part.  While the definition of "meaningful contact" involves subjectivity and there was no Best Practices dedicated to "meaningful contact," Zurich provided memos and communications to assist auditors with determining whether "meaningful contact" had occurred.  (Walker Suppl. Decl., Ex. B at 35:18-22.)

36.    Admit in part and deny in part.  Admit that after 2007, Zurich emphasized the quality of the files, which required more of a subjective analysis; however, at all points, there were subjective and objective components to the audits.  (*See* Defs.' 56.1 Stmt., ¶¶ 20, 21; Walker Decl., Ex. D at 30:07-17; 33:12-18; Ex. G at 33:21-24.)

37.    Deny.  Paragraph 37 sets forth an opinion and/or conclusion rather than a statement of fact, and is a mischaracterization of the cited deposition testimony.

38.    Admit that auditors were given Best Practices to use as guidelines and admit that the audits involved subjective and objective criteria.  As stated earlier, the Best Practices were not absolute.  (*See* ¶¶ 29, 30, *supra*; Kostkowski Decl., ¶ 4; Walker Suppl. Decl., Ex. F.)

39.    Admit that the transactional audits were new for the entire team and that the line of business spent time discussing this transition.

Adversarial Relationship

40.    Admit in part and deny in part.  As above stated, the Best Practices were guidelines for the auditors to use, and not a mandate.  (*See* ¶¶ 29, 30, 38, *supra*.)  Auditors had discretion to deviate from the Best Practices.  (*Id.*)

41.    Deny.  However, if an auditor believed that the claims adjuster or team manager had not followed Best Practices, *or* otherwise taken steps that the auditor felt were inappropriate given the specific circumstances of the file, then the auditor had discretion to provide a low score for that section of the file.  (Walker Suppl. Decl., Ex. B at 39:04-39:10.)

42.    Admit.

43.    Admit.

44.    Admit.

45.    Deny.  Prior to becoming Plaintiff's manager, Robbie participated in a rebuttal session during which she provided rebuttals on behalf of the team she managed at the time. (Walker Suppl. Decl., Ex. A at 74:19-75:06.)

Plaintiff's Employment Under Robbie

     46.    Deny.  (*See* Defs.' 56.1 Stmt, ¶¶ 13; 24, 26, 32, 33, and accompanying exhibits; Kostkowski Decl., ¶¶ 4-7.)

     47.    Deny knowledge or information sufficient to form a belief as to whether Robbie was the "only one who failed to address Plaintiff with a personal salutation," but admit the remainder of Paragraph 47.

     48.    Admit.

     49.    Deny.  Paragraph 49 sets forth opinions and/or conclusions rather than statements of fact.

     50.    Deny in part and admit in part.  Defendant Robbie did not inform Plaintiff that she had "changed."  Admit that, at some point in August 2007, Robbie *and* Kostkowski jointly determined, after receiving several complaints regarding Plaintiff's unclear and abrupt communications, that Plaintiff would benefit from an online course offered by Zurich to improve her communications skills.  (*See* Defs.' 56.1 Stmt, ¶ 29; Walker Decl., Ex. D at 93:07-15.)  Admit that Robbie decided to assign Plaintiff to audits that required less interaction with the field professionals, such as Construction Defect ("CD") Leakage Reductions audits. (Defs.' 56.1 Stmt, ¶ 30; Walker Decl., Ex. D at 87:04-11; Robbie Decl., Ex. CC.)  Admit that Robbie asked Plaintiff to copy her on Plaintiff's communications to the claim organization, but this did not occur until Plaintiff received her verbal warning in March 2008.  (Walker Decl., Ex. X.)

Plaintiff is Treated Differently Than Her Younger, White Counterparts[2]

51.    Deny.  Plaintiff was not the "oldest team member under Robbie," and was not treated differently than "younger, White" co-workers.  (Declaration of Catherine Spera ("Spera Decl.") at ¶¶ 2, 4;  Defs.' 56.1 Stmt., ¶ 116.)  The remainder of Paragraph 51 sets forth opinions and/or legal conclusions rather than statements of fact.

52.    Admit that the individuals listed reported to Robbie in August 2007, but deny that Plaintiff was the "oldest" employee in the referenced list.  (Spera Decl., ¶ 2.)

53.    Admit that Robbie assigned Plaintiff to Construction Defect ("CD") Leakage Reductions audits in 2007, which were new audits that neither Plaintiff nor any other Zurich auditor had worked on in the past while at Zurich, but deny that Plaintiff required "training" for these audits.  (*See* Defs.' 56.1 Stmt, ¶ 30; Walker Decl., Ex. D at 87:04-88:08.)  These audits were not complex and did not require any additional skills that Plaintiff did not already possess, particularly given her purported twenty-six years of industry experience.  (*Id.*; Plaintiff's 56.1 Counter-Statement of Material Facts at ¶ 1.)

54.    Deny the first two statements in Paragraph 54, which fail to identify sources and set forth opinions and/or conclusions rather than statements of fact.  With respect to the last statement, Defendants admit that the cited exhibit indicates that both Robbie and Marilyn Acree thanked Plaintiff for bringing an issue to their attention.

55.    Admit.

56.    Deny.  Paragraph 56 sets forth opinions and/or legal conclusions rather than statements of fact.

---

[2]    Defendants dispute the characterization of this heading, and the remainder of the headings in Plaintiff's Counter-statement of Material Facts.

57.   Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's communications with Kristen Shalda.  Defendants deny that this incident was "omitted" from Plaintiff's 2007 evaluation, but admit that, to the extent that this incident occurred, it was simply an example of Plaintiff doing her job, was insignificant, and thus would not have been included in Plaintiff's year-end performance review.

58.   Deny.  As the cited exhibit establishes, Robbie discussed assignments related to a massive Liability N3 Contact Audit, which consisted of 560 short audits.  Robbie assigned 260 of these short audits to Plaintiff, 150 to Burris, and the remaining 150 to John Morales.  (*See* Defs.' 56.1 Stmt., ¶ 122; Walker Decl., Ex. D at 118:22-119-5; Walker Decl., Ex. R.)  In addition to these Liability N3 Contact Audits, each auditor received assignments involving other audits.  (*Id.*)  Robbie did not list the number of specific audits within the remaining assignments; as a result, the email does not indicate the actual total number of audits that each team member received in October 2007.  (Walker Decl., Ex. D at 121:25-122:18.)

59.   Deny.  Plaintiff did not receive 101 Team Manager Intervention files and 180 Construction Defect files.  (The supplemental Declaration of Jennifer Robbie ("Robbie Suppl. Decl."), at Ex. A)  At all times, Robbie ensured that Plaintiff's workload remained manageable. (*See* Defs.' 56.1 Stmt., ¶¶ 123; Robbie Decl., Ex. W.)

60.   Deny.  By Plaintiff's October 2007 e-mail, Robbie had already extensively explained the disqualification of files with Plaintiff, yet Plaintiff repeatedly asked the same questions, demonstrating a lack of understanding as to the concept of disqualification. (*See* Defs.' 56.1 Stmt, ¶ 35.)  As a result, Robbie concluded that Plaintiff needed to improve her skills in this area. (*Id.*)  The remainder of the allegations in Paragraph 60 contains opinions and/or legal conclusions rather than statements of fact.

61.    Admit that, as the cited exhibit establishes, Robbie recommended that Plaintiff take the AEI General Liability course number 217, which included a self-administered test,  "to assist [Plaintiff] in improvement of [her] coverage skills." (*See* Valli Decl., Ex. 20.) Deny the remainder of Paragraph 61, which sets forth opinions and/or legal conclusions rather than statements of fact.

Plaintiff Complains and Suffers Further Discrimination and Retaliation[3]

62.    Deny.  On October 16, 2007, Plaintiff asked Robbie to call her at home, but did not specify the reasons for the call.  (Walker, Suppl. Decl., Ex. G.)  Robbie, who had multiple meetings and trainings scheduled that week, informed Plaintiff that she would call her on Friday, October 19, 2007.  (*Id*.) On October 19, 2007, Robbie asked Plaintiff whether she was available to talk that afternoon.  (Walker Suppl. Decl., Ex. H**.**)  Plaintiff replied that she was "not sure." (*Id.*)

63.    Deny the majority of the allegations in Paragraph 63, which contain opinions and/or conclusions rather than statements of fact.  Admit that Plaintiff offered to assist Karen Spinner Pruden ("Pruden") with questions she had regarding an audit.  As indicated by the referenced exhibit, Robbie complimented Plaintiff for graciously offering to work with Pruden.

64.    Deny.  (*See* ¶ 58, *supra*.)

65.    Deny knowledge or information sufficient to form a belief as to the statements in paragraph 65, which are not supported by the cited exhibit.

66.    Deny the first four statements in Paragraph 66, which contain opinions and/or conclusions rather than statements of fact and lack citation to admissible evidence.  Admit that Plaintiff alleges that Magid made the remark in the fifth statement, but deny knowledge or

---

[3]        Defendants dispute the characterization of this heading, which contains an improper legal conclusion.

information sufficient to form a belief as to whether the statement was made.  In any event,

Plaintiff admitted that Robbie was no longer on the conference call by the time Magid

allegedly commented, "[a]nybody [who] audit[s] like this should no longer be auditing inside

Zurich." (*See* Defs.' 56.1 Stmt., ¶¶ 33, 102; Walker Decl., Ex. C. at 104:09-106:04.)

67.   Defendants deny knowledge or information sufficient to form a belief as to

whether Plaintiff noticed errors made by Morales, and contend that this fact is neither material

nor relevant because an employee would not have been placed on a development plan based on

errors found during only one calibration call.

68.   Admit that Plaintiff was asked to create a development plan, but deny that

Plaintiff was informed about the plan on October 23, 2007.  Plaintiff was asked to draft a plan

which would identify skills that Plaintiff needed to improve upon on or about October 12,

2007.  (Walker Decl., Ex. Q.)

69.   Deny.  (Walker Decl., Ex. D at 113:07-10.)

70.   Deny the first sentence in Paragraph 70, which contains opinions and/or

conclusions of law rather than statements of fact.  Deny the second and third sentences.  When

Plaintiff refused to create an action plan for herself, Robbie drafted the development plan for

her.  (*See* Defs.' 56.1 Stmt, ¶ 42; Walker Decl., Ex. C at 114:11-20; Walker Decl., Ex. S.)

71.   Deny Paragraph 71, which contains opinions and/or conclusions rather than

statements of fact.

72.   Deny knowledge or information sufficient to form a belief as to whether Plaintiff

was feeling ill.  Admit that Plaintiff asked Kostkowski to release her from the N3 audits and

that Kostkowski denied this request because the audits were part of Plaintiff's job

responsibilities and, at that time, it was not possible to reassign the N3 audits to other auditors. (Kostkowski Decl., ¶ 12.)

73.     Deny that "Plaintiff was placed on a thirty-day development plan by Robbie." The development plan was not performance discipline and was not a "thirty-day" plan.  (*See* Defs.' 56.1 Stmt, ¶¶ 36-39, 42; Kostkowski Decl., ¶ 11.)  Instead, the development plan was simply an email from Robbie identifying performance areas where Plaintiff needed improvement and a suggested plan for this improvement.  (Walker Decl., Ex. S.) Among other things, Robbie suggested that Plaintiff submit a week's worth of completed audits to Robbie every Friday for thirty days to assist Plaintiff with improving her calibration.  (*Id.*)

74.     Admit that Plaintiff discovered an error on the spreadsheets, which Robbie acknowledged, but deny Plaintiff's characterization of this incident as a "positive factor," as opposed to being part of Plaintiff's everyday job duties.  Plaintiff's allegation that this incident constituted a "positive factor" sets forth an opinion rather than a statement of fact.

75.     Admit.  As the cited exhibit shows, Robbie was having difficulty exiting the performance management system at the time and therefore added a "2" as a placeholder, which rating became a self-fulfilling prophecy for Plaintiff's year-end "2" rating. (*See* Defs.' 56.1 Stmt., ¶ 48.)

76.     Admit the first sentence in Paragraph 76, but deny the second sentence, which demonstrates a lack of personal knowledge, fails to identify sources, and constitutes an opinion and/or conclusion rather than a statement of fact.

77.     Deny.  "Programs" was an office within Zurich, and not a division.  Furthermore, Plaintiff's assignments were at all times equivalent to those of her peers. (*See* Defs.' 56.1 Stmt, ¶ 123.)

78.   Deny.  The development plan did not "expire" because it was not a thirty-day performance disciplinary document.  (*See* Defs.' 56.1 Stmt, ¶¶ 36-39, 42.)

79.   Admit.

80.   Deny.  Paragraph 80 is a rationalization for Plaintiff's poor performance, and contains an opinion and/or conclusion without citation to any supporting evidence.

81.   Deny.  Plaintiff's characterization of the "action plan," but admit that Plaintiff's coverage determination disqualification skills and coverage verification skills were identified as areas that needed improvement in the development plan Robbie drafted for Plaintiff after Plaintiff refused to draft a plan for herself.  (*See* Defs.' 56.1 Stmt, ¶¶ 36-39, 42; Walker Decl., Ex. S.)

82.   Deny.  (*See* ¶ 63, *supra.*)

83.   Deny.  (*See* ¶ 63, *supra.*)

84.   Defendants refer the Court to the referenced document for its content and meaning, and deny the remaining allegations in Paragraph 84, which contain opinions and/or conclusions rather than statements of fact.

85.   Admit that Plaintiff forwarded an email to Robbie from an employee in the Programs office stating that the employee was unable to access a new form, which Robbie later forwarded to Thomas Lysaught, but deny Plaintiff's characterization of her forwarding one email as evidence of "positive performance."  Plaintiff's characterization of this incident as "positive performance" constitutes an opinion rather than a statement of fact.

86.   Admit the first sentence and deny the second sentence.  Burris was acting team leader during that time. (*See* Defs.' 56.1 Stmt ¶ 44.)

<u>Plaintiff's Programs Presentation</u>

87.    Admit.

88.    Admit, except state that Marty Braun was a Vice-President in the Claims Department and not Chief Claims Officer for Programs. (*See* Defs.' 56.1 Stmt ¶ 69.)

89.    Deny knowledge or information sufficient to form a belief as to Plaintiff's activities on March 14, 2008.

90.    Admit.

91.    Deny. As the referenced exhibit establishes, Plaintiff was informed of this assignment well before March 7, 2008, and was asked about the status of the assignment on that date.

92.    Admit.

93.    Admit the first two sentences, but deny the third sentence, which constitutes an opinion and/or legal conclusion rather than a statement of fact.

94.    Deny the allegations in Paragraph 94, but admit that Robbie sent Karen Horwich an email praising her recent presentation. While Robinson received positive comments regarding her presentation from Marty Braun, an individual whose work Robinson audited, there were several other employees who commented that Robinson's presentation was confusing. (*See* Defs.' 56.1 Stmt, ¶ 45.)

<u>Robbie's Unjustified Attacks on Plaintiff's Performance Were in Further Discrimination, Harassment, and Retaliation Continue [*sic*]</u>[4]

95.    Deny the allegations in Paragraph 95, which contain opinions and/or legal conclusions rather than statements of fact and is not supported by the cited exhibit. As was her practice, Robbie provided Plaintiff with her performance evaluation during the March 25, 2008

---

[4]        Defendants dispute the characterization of this heading, which contains an improper legal conclusion.

meeting, and then provided Plaintiff with an opportunity to discuss the evaluation.  (*See* Defs.'
56.1 Stmt, ¶ 56; Walker Decl., Ex. C at 132:2-15.)

96.   Admit.

97.   Admit.  The meeting lasted for approximately fifteen minutes because Plaintiff
stated that she did not have any questions and had nothing to discuss.  (*See* Defs.' 56.1 Stmt, ¶
56; Walker Decl., Ex. C at 132:2-21.)  Robbie did not meet with Deborah Conley because Ms.
Conley was not receiving a verbal warning, whereas Plaintiff was receiving both a "2" rating
and a verbal warning, and as such, Robbie believed it would be more professional for her to
speak with Plaintiff in person and discuss any questions or concerns Plaintiff had.  (*See* Defs.'
56.1 Stmt, ¶ 52; Walker Decl., Ex. D at 168:24-169:05.)

98.   Defendants lack knowledge or information sufficient to form a belief as to what
Plaintiff tried to do, but admit that Plaintiff called Spera and left a voicemail complaining that
she had driven back and forth from Rocky Hill, Connecticut to Long Island, New York.  (*See*
Defs.' 56.1 Stmt ¶ 60.)

99.   Deny, but admit that Plaintiff called Spera on March 27, 2008 and again did not
complain about discrimination or retaliation.  (*See* Defs.' 56.1 Stmt, ¶ 61.)

100.  Deny.  Plaintiff stated that she believed her review was "unfair" and that she "was
not pleased with the review.  (*See* Defs.' 56.1 Stmt, ¶ 61; Walker Decl., Ex. C at 134:22-
135:21.)

101.  Deny.  The auditors received varying assignments every month, which varied in
complexity and in number.  (Walker Decl., Ex. D at 118:16-21; Robbie Suppl. Decl., Ex. A.).
In any event, Plaintiff had 494 audits in March 2008, Deborah Conley had 613, and Pam Burris
had 336.  (Robbie Suppl. Decl., Ex. A, at ZURICH013112.)

17

102.  Admit.

103.  Deny, but admit that Robbie accommodated Plaintiff by reassigning some of Plaintiff's Programs audits after Plaintiff complained that the audits took her too much time to complete. (Defs.' 56.1 Stmt, ¶ 123; Robbie Decl., Ex. W.)

104.  Admit.

105.  Deny the allegations in Paragraph 105, except admit that Robbie met with Plaintiff to discuss her written warning.  Plaintiff received feedback on her Programs audit during an earlier meeting and in writing in her verbal warning.  (Walker Decl., Ex. X.)

106.  Admit.

107.  Admit.

108.  Admit.

109.  Deny.  Every auditor was required to complete this report.  (*See* Defs.' 56.1 Stmt, ¶¶ 77-79.)  Further, Plaintiff had completed this type of report on numerous occasions in the past and admitted that she had the skills required to do so.  (*Id.*)

110.  Admit.  Jenny Killgore ("Killgore") suggested a complete re-audit of Robinson's audits after Robinson failed to meet the terms of her verbal and written warning and her probationary period.  (*See* Defs.' 56.1 Stmt, ¶¶ 88; 89.)

111.  Admit.

112.  Admit.

113.  Admit.

114.  Admit.

115.  Admit.

116.   Admit that Burris made a typographical error and assigned files out of sequence, but deny the remainder of the allegations in Paragraph 116, which contain opinions and/or legal conclusions and lacks citation to admissible evidence.

117.   Defendants deny knowledge or information sufficient to form a belief as to Plaintiff's justifications for her poor accuracy, but admit that Plaintiff's accuracy scores were low and that this was reflected in her 2008 year-end evaluation.

118.   Admit that Plaintiff was asked to review her 2008 year-end evaluation at some point, but deny that the cited exhibit supports the proposition stated.

119.   Deny the allegations in Paragraph 119, which are not supported by the cited exhibit.  To the extent that Plaintiff is referring to her 2007 year-end review, as above stated, Robbie provided Plaintiff with her performance evaluation during the March 25, 2008 meeting, and then provided Plaintiff with an opportunity to discuss this evaluation.  (*See* ¶ 95, *supra*; Defs.' 56.1 Stmt, ¶ 56; Walker Decl., Ex. C at 132:2-7.)

120.   Admit that Robbie emailed Killgore comments by a Zurich employee on March 16, 2009, but deny the remainder of the allegations in Paragraph 120.  As the referenced exhibit clearly establishes, Robbie sent Killgore an email discussing both Plaintiff and another employee's performance; however, the comments regarding the other employee were separate and unrelated to Plaintiff, and were not, in any manner, referenced in Plaintiff's performance evaluation.

Robbie Attacks Plaintiff's Vacation Time[5]

121.   Admit the first sentence in Paragraph 121, but deny the remainder of the paragraph, which contains opinions and/or legal conclusions rather than statements of fact.

---

[5]     Defendants dispute the characterization of this heading.

122.   Admit that Plaintiff sent an email to Chris Theros discussing her missionary work and alleging that Zurich was aware of her missionary work, but deny the remainder of Paragraph 122, which contains opinions and/or conclusions and demonstrates a lack of personal knowledge.  Plaintiff was never, at any point, promised or guaranteed time off every year for her missionary work and had to request time off in advance, as did every other Zurich employee, in accordance with the Company's policies and practices.  (Defs.' 56.1 Stmt, ¶ 97; Walker Decl., Ex. UU.)

123.   Admit.

Plaintiff Engaged in Protected Activity[6]

124.   Deny.  Spera's notes do not contain any statements indicating that Plaintiff complained about discrimination because, in fact, Plaintiff never complained about discrimination and/or retaliation.  (Defs.' 56.1 Stmt, ¶¶ 40, 41; Walker Decl., Ex. W; Walker Decl., Ex. F at 132:11-25; 134:22-135:02.)

125.   Admit.

126.   Deny the allegations in Paragraph 126, which contain opinions and/or legal conclusions rather than statements of fact, except admit that Plaintiff called Spera on March 27, 2008, and complained that her evaluation was "unfair" and that she "was not pleased with the review."  (*See* Defs.' 56.1 Stmt, ¶ 61; Walker Decl., Ex. C at 134:04-21.)

127.   Deny, but admit that on May 14, 2008, Plaintiff forwarded an email she had received from Robbie to Spera and Killgore and requested a meeting based on her allegation that she was "having difficulty working with Jenn Robbie based on her continual

---

[6]        Defendants dispute the characterization of this heading, which contains an improper legal conclusion.

misrepresentation of facts pertaining to [Plaintiff's] work." (*See* Defs' 56.1, ¶ 69; Walker Decl., Ex. AA.)

128.  Admit.

129.  Admit.

130.  Admit.

131.  Admit.

132.  Admit that Plaintiff was informed of her termination on August 31, 2009, but deny that she was terminated by Defendant Robbie and Spera.  Killgore and Robbie jointly made the decision to terminate Plaintiff's employment, and Robbie and Spera informed Plaintiff of this decision on August 31, 2009.  (*See* Defs.' 56.1 Stmt, ¶92; Walker Decl., Ex. D at 189:11-15.)

133.  Defendants lack knowledge or information sufficient to form a belief as to when Plaintiff filed her retaliation charge, but admit that Plaintiff amended her charge with the EEOC to allege a claim of retaliation.

Dated:   New York, New York
        December 9, 2011

SEYFARTH SHAW LLP

By: s/ Peter A. Walker
    Peter A. Walker
    Lori M. Meyers
    Hema Chatlani
620 Eighth Avenue
New York, New York 10019
(212) 218-5500

Attorneys for Defendants