UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HERMA ROBINSON,                                    :

                   Plaintiff,            :   No. 10-CIV-3926 (JFB) (AKT)

                         :

              v.                  :   **DECLARATION OF**
                         :   **JOSEPH KOSTKOWSKI**

ZURICH AMERICAN INSURANCE COMPANY, and   :
JENNIFER ROBBIE aider and abettor,       :

              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      I, **JOSEPH KOSTKOWSKI**, being duly sworn, declare under penalty of perjury that

the foregoing is true and correct:

      1.      I am currently employed as Major Case Unit Supervisor with Zurich American

Insurance Company ("Zurich"). I am fully familiar with the facts set forth in this Declaration,

which I offer in further support of Defendants' Motion for Summary Judgment.

      2.      In 2003, I interviewed plaintiff, Herma Robinson ("Robinson"), and thereafter

recommended her hire. While Ms. Robinson impressed me during the interview process, I was

later disappointed to learn that she did not have the extensive commercial background experience

that she claimed to have during the interviews.

      3.      I supervised Ms. Robinson from the time of her hire until in or around August of

2007.

      4.      During my supervision of Ms. Robinson, I became aware of certain deficiencies

in her performance. For example, Ms. Robinson frequently made mathematical errors, did not

review her reports carefully, and had difficulty communicating in a clear and professional

manner. She also had difficulty understanding that the Best Practices were not absolute, and that

there were times when an auditor had to use his or her judgment to determine whether a claims employee had followed the most appropriate steps under the circumstances.

5.      When Ms. Robinson reported to me, I received complaints from various field employees that Ms. Robinson communicated in a blunt and sometimes unclear manner.

6.      I spoke with Ms. Robinson on numerous occasions about her performance deficiencies. At that time, because I wanted to give Ms. Robinson the benefit of the doubt, I did not institute any formal disciplinary action. Before any formal discipline, I wanted to coach her and see if her performance improved. In addition to speaking with Ms. Robinson about her performance deficiencies, I identified specific areas that needed improvement in Ms. Robinson's 2005, 2006, and 2007 year-end reviews.

7.      By April 2007, it became apparent to me that Ms. Robinson's communication skills had not improved and she was still clashing with certain field claims employees. At the time, I thought that it would benefit Ms. Robinson and the department to transfer her to transactional audits. In addition to believing that it is beneficial for employees to rotate the type of audits that they perform, it also was a chance for Ms. Robinson to have a fresh start in dealing with the field on other types of audits, and it was my belief at the time that Ms. Robinson would have had less face-to-face interactions with the field when conducting transactional audits.

8.      However, Ms. Robinson was not able to take advantage of this fresh start. Her interaction with field employees in transactional audits resulted in the same difficulties that Ms. Robinson had experienced on closed file audits.

9.      In August 2007, Ms. Robinson began reporting to Jennifer Robbie. From approximately August 2007 to April 2008, Ms. Robbie reported to me. Although I did not

directly supervise Ms. Robinson at that time, I was apprised of her performance and spoke with Ms. Robinson on at least one occasion regarding her performance.

10.     In or around October 2007, Ms. Robbie informed me that she had asked Ms. Robinson to prepare a development plan for herself identifying performance areas where she needed improvement and suggesting a plan for this improvement. Ms. Robinson later spoke with me and expressed her dissatisfaction with having to create the development plan. I informed Ms. Robinson that both Ms. Robbie and I supported her development and wanted her to succeed, and the plan would only assist her in doing so. Ms. Robbie later informed me that Ms. Robinson had refused to create a plan in accordance with Ms. Robbie's direction. However, Ms. Robbie also gave Ms. Robinson the benefit of the doubt and actually created a development plan for Ms. Robinson.

11.     The development plan was not a form of discipline; rather, it was a list of areas where Ms. Robinson needed to improve her performance and recommendations for achieving this improvement.

12.     At around the same time, Ms. Robinson asked that I remove her from the N3 audits that she was completing at the time. I declined her request because the N3 audits were part of her job responsibilities and we did not have enough adjusters to take over these audits.

13.     Because I supervised Ms. Robinson for two-thirds of 2007, I prepared her 2007 year-end review with Ms. Robbie. We jointly gave Plaintiff a "2" rating, the equivalent of a "partially meets expectations," for this performance year.

14.     At around the same time that we completed Ms. Robinson's 2007 year-end performance evaluation, Ms. Robbie spoke with me regarding placing Ms. Robinson on a verbal

warning addressing Ms. Robinson's need to improve her accuracy and communication skills. I

agreed that a verbal warning was then warranted.

Dated: Owings Mills, Maryland
      December 8, 2011

                                            JOSEPH KOSTKOWSKI